IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| F'REAL FOODS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| WELBILT, INC., | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff f'real Foods LLC ("f'real") hereby asserts claims against Defendant Welbilt, Inc. ("Welbilt") for infringement of U.S. Patent Nos. 7,144,150 and 7,520,662 and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2. f'real is a California limited liability company with its principal place of business at 6121 Hollis Street, Suite 500, Emeryville, California 94608. f'real regularly does business in this judicial district through its retail customers and is registered as a foreign corporation with the State of Delaware.

3. Welbilt is a Delaware corporation with its principal place of business at 2227 Welbilt Blvd., New Port Richey, Florida 34655.

**JURISDICTION AND VENUE**

4. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. Venue is proper in this judicial district as to Welbilt under 28 U.S.C. § 1400(b).

7. Welbilt is subject to this Court's general and specific personal jurisdiction because it is incorporated in Delaware and has purposely availed itself of the privileges and benefits of the laws of the State of Delaware. Further, upon information and belief, Welbilt has sufficient minimum contacts within the State of Delaware because Welbilt purposefully availed itself of the privileges of conducting business in the State of Delaware.

## BACKGROUND

8. f'real produces frozen milkshakes, smoothies and cappuccino beverage products that are sold at over 19,000 locations across the United States and Canada, including convenience stores, colleges, universities, theaters and military bases. To enjoy a f'real product, the customer chooses a desired frozen milkshake, smoothie or cappuccino from a merchandizing freezer at the retail location and inserts it into a patented blender sold to the retailer by f'real. The blender then mixes the frozen product to a desired consistency and makes it available for the enjoyment of the customer.

9. f'real's founder, Mr. Jim Farrell, began f'real's business in the garage of his California home. Mr. Farrell's objective was to build a business that would allow customers to prepare their own high quality frozen drinks at convenience stores and fast food restaurants.

10. In building the f'real business, Mr. Farrell faced numerous challenges. A first challenge was providing the customer with a choice of quality frozen drinks that could be quickly prepared without extensive training or involvement by the busy retailer. A second challenge was to

keep the blender sanitary after frozen drinks were prepared, again without extensive training or involvement by the busy retailer.

11. Mr. Farrell addressed the first challenge by pre-preparing frozen drinks in various flavors using quality ingredients, freezing them into single-serving cups and then sealing the cups for delivery to the retailer. To achieve a preferred old-fashioned texture for f'real's frozen drinks, Mr. Farrell developed a novel blender. In testing prototype blenders, Mr. Farrell found that simply cutting through the frozen drink with a blender blade did not produce the old-fashioned milkshake texture he wanted. After hard work and experimentation, Mr. Farrell discovered that adding liquid, such as milk or water, to the frozen drink and aerating the frozen drink during the blending process produced the desired old-fashioned texture. On September 8, 1998, f'real was duly and legally issued U.S. Patent No. 5,803,377 for its first generation blender, titled "Apparatus And Method For Making Frozen Drinks," naming Mr. Farrell as the inventor.

12. Unless the blender is cleaned in a timely manner, flavors from one frozen drink will contaminate subsequent frozen drinks and bacteria can grow on food particles left in the blending chamber. To address this need for cleanliness, Mr. Farrell conceived of a second generation of f'real blender that both minimized the amount of food particles released in the food preparation chamber during preparation of the frozen drink and then automatically rinsed the food preparation chamber after the frozen drink was prepared. Mr. Farrell's concept minimized the release of food particles by having f'real's blender automatically use a splash shield to cover most of the top of the frozen drink cup while the frozen drink was being blended. When the blending was complete and the frozen drink was removed from the blending chamber, the blender automatically cleaned the blending chamber by spraying rinsing fluid through pre-positioned nozzles, at least some of which were pointed at the splash shield, to rinse off the splash shield.

13. The second generation f'real blender was an immediate success. Within the first year of the f'real self-rinsing blender hitting the market, f'real's cup sales increased over 4000% (to 1.4 million cups sold) and have continued rising ever since. Today, f'real annual sales top $100 million.

14. On November 15, 2002, Mr. Farrell filed U.S. Provisional Patent Application No. 60/426,622 for his automatic self-rinsing blender and self-rinsing process. This U.S. Provisional Patent Application led to three issued U.S. Patents for f'real's self-cleaning blender.

15. On December 5, 2006, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,144,150 ("'150 patent"), titled "Rinseable Splash Shield And Method Of Use," naming Mr. Farrell as the inventor. f'real owns the '150 patent and has the right to sue for infringement. A copy of the '150 patent is attached to this Complaint as Exhibit 1.

16. On April 21, 2009, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,520,662 ("'662 patent"), titled "Rinseable Splash Shield And Method Of Use," again naming Mr. Farrell as the inventor. f'real owns the '662 patent and has the right to sue for infringement. A copy of the '662 patent is attached to this Complaint as Exhibit 2.

**DEFENDANTS' INFRINGING ACTIVITIES**

17. Defendant Welbilt is a manufacturer of drink machines for fast food restaurants and convenience stores. On information and belief, Welbilt has promoted the sale of three blenders using f'real's patented self-rinsing blender technology, the Multiplex FreshBlender®, the Multiplex Blend In Cup® Workstation, and the MAM9904 Blend-In-Cup® – Manual Fill (collectively, the "Accused Products"), at the October 2017 National Association of Convenience Stores ("NACS") trade show in Chicago, Illinois; the October 2018 NACS trade show in Las Vegas, Nevada; and on its website, www.multiplexbeverage.com.

18.     The Multiplex FreshBlender prepares flavored crushed ice drinks. To use the Multiplex FreshBlender, the user places a plastic cup into a recessed cup holder on the left side of the machine and chooses a desired flavor.  The Multiplex FreshBlender then dispenses ice and the desired flavoring into the cup.  After the drink ingredients are dispensed into the cup, the cup is automatically moved to the mixing chamber on the right side of the machine where a splash shield is placed on top of the cup and a rotatable blade is lowered to mix the ingredients.  After the ingredients are fully mixed, the Multiplex FreshBlender raises the splash shield and moves the mixed drink back to the left side of the machine where the user can retrieve the blended drink.  The mixing chamber on the right side of the Multiplex FreshBlender is then automatically rinsed by rinse nozzles directed at the splash shield to make sure the mixing chamber is cleaned before the next blended drink is prepared.



Multiplex FreshBlender

19.     According to an article published by Convenience Store News, Multiplex FreshBlender blenders have been installed in approximately 600 Kwik Trip convenience stores since October 2018. See "Kwik Trip Gets Fresh With New Smoothie Program," dated April 16, 2019, available at https://csnews.com/kwik-trip-gets-fresh-new-smoothie-program.

20. The Multiplex FreshBlender made by Welbilt practices the inventions disclosed and claimed in f'real's '150 and '662 patents.

21. Like the blenders and methods disclosed and claimed in f'real's '150 patent, the Multiplex FreshBlender is a mixing machine that mixes a liquid mixture in a cup using a rotatable mixing element where a splash shield is used to cover the top of the cup during the mixing process and rinse nozzles oriented towards the splash shield are used to clean the splash shield after the mixing process is completed.

22. For f'real's '662 patent, in the process of using the Multiplex FreshBlender, a user places a cup into a recessed Multiplex FreshBlender holder which is then loaded with material to be mixed. In its mixing chamber, the Multiplex FreshBlender has a splash shield positionable to shield the opening of the cup and a rinse nozzle oriented toward the splash shield. After blending is completed using a rotatable mixing element extendable into the cup, the splash shield is automatically unshielded and the user is allowed to remove the blended drink. The Multiplex FreshBlender rinse nozzles then spray rinsing fluid to clean off the splash shield.

  

Multiplex FreshBlender

23. The Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders also prepare flavored crushed ice drinks. To use the Multiplex Blend In Cup

Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders, the user places a plastic cup into a middle position below the crushed ice and liquid flavoring dispenser. After the user chooses a desired flavor, the Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders dispense ice and the desired flavoring into the cup. With the starting ingredients now in the cup, the user moves the cup to a mixing chamber on either the left or right side of the dispensing station. The user lifts the entrance door of the selected mixing chamber, inserts the cup into the mixing chamber and then closes the entrance door. With the cup in the selected mixing chamber and the entrance door closed, a splash shield is lowered to cover the cup opening and a rotatable mixing element is used to mix the ingredients in the cup. After the drink ingredients are fully mixed, the Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders raise the splash shield and rotatable mixing element. The user can then lift the mixing chamber entrance door to remove the mixed drink. After the mixed drink is so removed, the mixing chamber becomes a rinse chamber where the splash shield is automatically rinsed by rinse nozzles directed at the splash shield.



Multiplex Blend In Cup Workstation



MAM9904 Blend-In-Cup – Manual Fill

24. The Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders made by Welbilt practice the inventions disclosed and claimed in f'real's '150 and '662 patents.

25. Like the blenders and methods disclosed and claimed in f'real's '150 patent, the Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders are mixing machines that mix a liquid mixture in a cup using a rotatable mixing element where a splash shield is used to cover the top of the cup during the mixing process and rinse nozzles oriented towards the splash shield are used to clean the splash shield after the mixing process is completed.

26. For f'real's '662 patent, in the process of using the Multiplex Blend In Cup Workstation or MAM9904 Blend-In-Cup – Manual Fill blenders, a user places a cup loaded with material to be mixed into a holder. The Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders have a splash shield positionable to shield the opening of the cup and a rinse nozzle oriented toward the splash shield. After blending is completed using a rotatable mixing element extendable into the cup, the splash shield is automatically unshielded and the user is allowed to remove the blended drink. The Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill rinse nozzles then spray rinsing fluid to clean off the splash shield.

## COUNT I
**(Infringement of U.S. Patent No. 7,144,150)**

27. f'real realleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

28. The '150 patent is valid and enforceable.

29. Welbilt has directly infringed at least claims 1, 3, 7, 8, 12, 14, 15, 20 and 24 of the '150 patent by making, using, offering for sale, selling, and/or importing into the United States Multiplex FreshBlender that embody or practice the patented inventions. Welbilt has also directly

infringed at least claims 1, 7, 8, 12, 15 and 20 of the '150 patent by making, using, offering for sale, selling, and/or importing into the United States Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders that embody or practice the patented inventions.

30. Welbilt has had actual knowledge of the '150 patent since at least August 2018 from correspondence between f'real and Welbilt regarding the '150 patent.

31. Despite knowing through communications with f'real that Welbilt's Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders infringe the '150 patent, Welbilt has induced the infringement of at least claims 1, 3, 7, 8, 12, 14, 15, 20 and 24 of the '150 patent by providing operating information and/or demonstrations to users and prospective users.

32. Despite knowing through communications with f'real that Welbilt's Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders infringe the '150 patent, Welbilt has contributed to the infringement of at least claims 1, 3, 7, 8, 12, and 14 by others by providing the Accused Products to customers. The Accused Products and/or their self-cleaning components are not staple articles of commerce, have no substantial non-infringing uses, and are specifically designed to perform the processes claimed in the '150 patent.

33. Since Welbilt knows that its Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders infringe the '150 patent, Welbilt's infringement of the '150 patent is willful, deliberate and in conscious disregard of f'real's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §§ 284 and 285.

34. On information and belief, Welbilt will continue to infringe the '150 patent, and thereby cause irreparable injury to f'real, unless enjoined and restrained by this Court.

35. As a result of the infringement of the '150 patent by Welbilt, f'real has been damaged in an amount to be determined at trial.

**COUNT II**
**(Infringement of U.S. Patent No. 7,520,662)**

36. f'real realleges and incorporates by reference paragraphs 1 through 35 of this Complaint.

37. The '662 patent is valid and enforceable.

38. Welbilt has directly infringed at least claims 21 and 22 of the '662 patent by making and/or using the Multiplex FreshBlender blenders that practice the patented inventions. Welbilt has also directly infringed at least claim 21 of the '662 patent by making and/or using the Multiplex Blend In Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill blenders that practice the patented invention.

39. To the extent that any step or steps of claim 21 or claim 22 of the '662 patent is not directly performed by Welbilt during operation of the Accused Products, Welbilt directs or controls the performance of those steps by others and/or conditions the receipt of a benefit upon performance of such steps and establishes the manner or timing of that performance.

40. Welbilt has had actual knowledge of the '662 patent since at least August 2018 from correspondence between f'real and Welbilt regarding the '662 patent.

41. Despite knowing through communications with f'real that Welbilt's Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders infringe the '662 patent, Welbilt has induced the infringement of at least claims 21 and 22 of the '662 patent by providing operating information and/or demonstrations to users and prospective users.

42. Despite knowing through communications with f'real that Welbilt's Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders infringe the '662 patent, Welbilt has contributed to the infringement of at least claims 21 and 22 by others by providing the Accused Products to customers. The Accused Products and/or their self-cleaning components are not staple articles of commerce, have no substantial non-infringing uses, and are specifically designed to perform the processes claimed in the '662 patent.

43. Since Welbilt knows that its Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders infringe the '662 patent, Welbilt's infringement of the '662 patent is willful, deliberate and in conscious disregard of f'real's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §§ 284 and 285.

44. On information and belief, Welbilt will continue to infringe the '662 patent, and thereby cause irreparable injury to f'real, unless enjoined and restrained by this Court.

45. As a result of the infringement of the '662 patent by Welbilt, f'real has been damaged in an amount to be determined at trial.

## JURY DEMAND

f'real hereby demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, f'real asks this Court to enter judgment in f'real's favor and against defendant Welbilt as follows:

A. That defendant Welbilt has infringed f'real's '150 and '662 patents;

B. That infringement of the '150 and '662 patents by Welbilt has been willful;

C. That defendant Welbilt, its officers, agents, servants, employees and all persons in active concert or participation with any of them, and their successors and assigns be

temporarily, preliminarily, and permanently enjoined from infringement of the '150 and '662 patents including, but not limited to, making, using, offering for sale, selling, and/or importing into the United States Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders and any other blending machines that infringe any of the patents-in-suit before the expiration dates of those patents;

        D.      As part of the prayed for injunction, that this Court order defendant Welbilt to recall from retailers and all others in the chain of commerce all infringing Multiplex FreshBlender, Multiplex Blend In Cup Workstation, and MAM9904 Blend-In-Cup – Manual Fill blenders;

        E.      That f'real be awarded damages under 35 U.S.C. § 284 adequate to compensate it for defendant Welbilt's infringement of the '150 and '662 patents, but no less than a reasonable royalty, with interest (including pre-judgment and post-judgment interest), and a trebling of such damages in view of the willful nature of the infringement;

        F.      That defendant Welbilt be ordered to make a written report within a reasonable period, to be filed with the Court, detailing the manner of compliance with the requested injunctive relief;

        G.      That f'real be awarded its reasonable attorneys' fees and costs of suit; and

        H.      That f'real be awarded such other relief as the Court may deem just and proper.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Michael Flynn* |
| OF COUNSEL: | Rodger D. Smith II (#3778)<br>Michael Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br>rsmith@mnat.com<br>mflynn@mnat.com |
| Guy W. Chambers<br>Ellen P. Liu<br>SIDEMAN & BANCROFT LLP<br>One Embarcadero Center, 22nd Floor<br>San Francisco, CA  94111<br>(415) 392-1960 |  |
|  | *Attorneys for Plaintiff* |
| June 3, 2019 |  |