# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| F'REAL FOODS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 19-1028-CFC |
| v. | ) |
| | ) |
| WELBILT, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT WELBILT, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STAY

OF COUNSEL:

Joseph A. Loy
Christopher Ilardi
Kyle D. Friedland
Kirkland & Ellis LLP
601 Lexington Ave
New York, NY 10022
(212) 446-4800

Kelly E. Farnan (#4395)
Renée M. Mosley (#6442)
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
mosley@rlf.com

*Attorneys for Defendant*

Dated: September 27, 2019

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF FACTS .......... 1

II.   SUMMARY OF ARGUMENT ........................................................................................ 3

III.  ARGUMENT ........................................................................................................................ 3

     A.    All Three Factors That Courts Consider in Deciding Whether to Stay Litigation Strongly Favor Granting a Stay in This Case ........................................ 3

           1.   Staying This Action Will Simplify, If Not Completely Resolve, the Issues in This Case ............................................................................... 4

           2.   Discovery Is in Its Infancy, and Trial Is Not Set ....................................... 8

           3.   A Stay Will Not Cause Undue Prejudice or a Clear Tactical Disadvantage to f'real ................................................................................. 9

IV.  CONCLUSION .................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. Mediatek Inc.*,
   No. CV 19-70-CFC, 2019 WL 4082836 (D. Del. Aug. 29, 2019) ............................................4

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
   713 F.3d 1377 (Fed. Cir. 2013)..................................................................................................6

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,
   No. CV 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015).........................................7

*Ever Win Int'l Corp. v. Radioshack Corp.*,
   902 F. Supp. 2d 503 (D. Del. 2012)...........................................................................................8

*Glenayre Elecs., Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006)....................................................................................................6

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
   No. CIV.A. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005) ...................................8

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   No. CV 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019).........................................7

*Landis v. N. Am. Co.*,
   299 U.S. 238 (1936)...................................................................................................................4

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
   No. CIV.A. 12-088-RGA, 2012 WL 2803695 (D. Del. July 10, 2012)........................... *passim*

*Round Rock Research LLC v. Dole Food Co. Inc.*,
   No. CIV.A. 11-1239-RGA, 2012 WL 1185022 (D. Del. Apr. 6, 2012) ....................................4

*Spectrum Pharm., Inc. v. Innopharma, Inc.*,
   No. 12-260-RGA-CJB, 2015 WL 3374922 (D. Del. May 22, 2015) ........................................5

*Ultra Prod., Inc. v. Best Buy Co.*,
   No. CIV.A.09-1095-MLC, 2009 WL 2843888 (D.N.J. Sept. 1, 2009) .................................4, 5

**Statutes**

35 U.S.C. § 311(b) .........................................................................................................................7

35 U.S.C. § 316(a)(11).....................................................................................................................7

I.      NATURE AND STAGE OF PROCEEDINGS AND SUMMARY OF FACTS

Plaintiff f'real foods, LLC ("f'real") filed this action against Defendant Welbilt, Inc. ("Welbilt") on June 3, 2019, alleging infringement of U.S. Patent Nos. 7,144,150 and 7,520,662 ("'150 patent" and "'662 patent"; collectively, the "asserted patents").  D.I. 1.  Welbilt filed its answer, affirmative defenses, and counterclaims against f'real on July 26, 2019.  D.I. 9.  f'real filed its answer to Welbilt's counterclaims on August 12, 2019.  D.I. 12.  The scheduling conference has not taken place; it is scheduled for October 7, 2019.  D.I. 14 ¶ 1.

Three days after filing this lawsuit against Welbilt, f'real filed a separate lawsuit against Welbilt's business partner, Fresh Blends, LLC ("Fresh Blends") in the Southern District of Florida. *f'real foods, LLC v. Fresh Blends North America*, No. 19-cv-80744 (S.D. Fla.) ("Florida Action"). There, f'real alleged infringement of the same two patents against essentially identical products as accused in the instant lawsuit.  *Compare* Ex. 1, Florida Action, D.I. 1 ¶ 17 (f'real's Complaint for Patent Infringement in the Florida Action) (accusing the "Fresh Blender®," the "Blend in Cup® Ice On Board," and the "Blend in Cup® Manual Fill" of patent infringement), *with* D.I. 1 ¶ 17 (accusing the "Multiplex FreshBlender®," the "Multiplex Blend In Cup® Workstation," and the "MAM9904 Blend-In-Cup® – Manual Fill" of patent infringement).

As the designer and manufacturer of the accused products here and in the Florida Action, Welbilt promptly moved to intervene in Florida.  In response, f'real amended its Florida complaint, dropping infringement allegations against two of the products—the Blend in Cup Ice On Board and the Blend in Cup Manual Fill—and opposed Welbilt's intervention motion.  f'real's amended complaint in the Florida Action retained all infringement allegations against the Fresh Blender, which is essentially the same product as the Multiplex FreshBlender accused of infringement in this Delaware case.  *Compare* D.I. 1 ¶ 18, *with* Ex. 2, Florida Action, D.I. 25 ¶¶ 17–18 (f'real's First Amended Complaint for Patent Infringement in the Florida Action) ("Florida FAC").

1

While the parties were briefing Welbilt's intervention motion, the Florida Judge issued an initial order setting a trial for April 13, 2020.  Ex. 3, Florida Action, D.I. 28 at 1.  Two weeks later, after briefing was complete on Welbilt's intervention motion, but before the Florida Judge ruled on it, f'real moved to stay the Florida Action, contending: (i) that a stay "would promote litigation and judicial economy [] by ensuring that the issues of infringement and invalidity, as to the accused product and the asserted patents, are not unnecessarily tried twice in duplicative litigation, and [] by significantly simplifying the issues to be tried in this district or mooting them altogether," (ii) that a stay "will avoid the risk of inconsistent results that could arise from litigating the same issues in two different forums at the same time," (iii) that "no party will be prejudiced by a stay of this action," and (iv) that a stay "would preserve a significant amount of judicial and party resources." Ex. 4, Florida Action, D.I. 32 at 8–10 (Plaintiff f'real foods, LLC's Motion To Stay And Memorandum Of Points And Authorities In Support) ("f'real Stay Mot.").

The Florida Court denied f'real's stay motion.  In denying it, the court emphasized that it was f'real that "brought it down [in Florida]" in the first instance, and stressed that "we do try in this district to have fairly accelerated schedules."  Ex. 5, Florida Action, D.I. 41 at 10:17–18, 13:15 (Sept. 17, 2019 Transcript of Scheduling Conference Hearing) ("Fl. Hr'g Tr.").  The Florida Court also granted Welbilt's motion to intervene, holding that "if we are going to have a patent infringement action, it makes sense for the manufacturer of the device to be in."  *Id.* at 13:18–19. The Florida Court then confirmed that trial will commence less than seven months from now, on April 13, 2020.  The scheduling order in the Florida Action was entered on September 19, 2019, a copy of which is attached as Exhibit 6 ("Fl. Sched. Order").

Welbilt now promptly moves to stay this case in its entirety pending resolution of the Florida Action.

## II. SUMMARY OF ARGUMENT

This case should be stayed in its entirety pending resolution of the Florida Action because a stay would greatly simplify, if not fully resolve, the issues in this case. f'real sued Welbilt's business partner, Fresh Blends, in Florida shortly after it filed this Delaware lawsuit; and, as f'real has stated, liability there "is dependent on disposition of the ***exact same issues***, ***concerning the exact same product and patents*** that Welbilt is currently litigating [here]." Ex. 4, f'real Stay Mot. at 10 (emphasis added). Welbilt is now a defendant in that case, which is on a fast track to trial in April 2020. Because of the overlapping issues between this case and the Florida Action— including noninfringement of the Fresh Blender and invalidity of the asserted patents, among others—the most efficient path forward is to stay this case pending resolution of the Florida Action, thereby eliminating duplicative litigation of overlapping issues and greatly simplifying the issues (to the extent that any remain) for this Court. Indeed, if the asserted patents are held invalid in the Florida Action, all of f'real's claims in the case would be resolved.[1] Once the contours of the Florida Action are resolved by April 2020, and to the extent the parties have not reached a global settlement, the parties can reconvene and notify this Court of any issues that remain to be decided.

## III. ARGUMENT

### A. All Three Factors That Courts Consider in Deciding Whether to Stay Litigation Strongly Favor Granting a Stay in This Case

It is well established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Advanced Micro Devices, Inc. v. Mediatek Inc.*, No. CV

---

[1] In moving for a stay, Welbilt seeks that its counterclaims also be stayed. This too is for efficiency given the existence of the Florida Action, and the very real possibility that the parties globally resolve their disputes before or shortly after the Florida trial occurs.

19-70-CFC, 2019 WL 4082836, at *2 (D. Del. Aug. 29, 2019) (quoting *Landis v. N. Am. Co.*, 299 U.S. 238, 254 (1936)). "The factors courts typically consider in deciding whether to exercise this discretionary power are: (i) whether a stay will simplify the issues in question and trial of the case; (ii) whether discovery is complete and a trial date has been set; and (iii) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Advanced Micro Devices*, 2019 WL 4082836, at *2; *see also Round Rock Research LLC v. Dole Food Co. Inc.*, No. CIV.A. 11-1239-RGA, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012). Each of these factors weigh in favor of staying this action pending resolution of the Florida Action.

### 1. Staying This Action Will Simplify, If Not Completely Resolve, the Issues in This Case

The first factor favors a stay because the Florida Action has the potential to resolve f'real's claims entirely and, at minimum, will simplify the issues for this Court. In both the Delaware and the Florida Actions, f'real asserts infringement (and Welbilt asserts invalidity) of the same patents, f'real and Welbilt are both parties, and there are overlapping accused products. As f'real told the Florida Court, liability there depends on the "exact same issues, concerning the exact same product and patents" as here. Ex. 4, f'real Stay Mot. at 10. Further, due to the Florida Action's accelerated schedule, "threshold questions of patent validity, enforceability, and construction will be addressed" in Florida before this case significantly advances, and in any event, well before trial would likely be scheduled here. *Ultra Prod., Inc. v. Best Buy Co.*, No. CIV.A.09-1095-MLC, 2009 WL 2843888, at *5 (D.N.J. Sept. 1, 2009). It is therefore "beyond argument that a resolution in the [Florida] Action would simplify the issues in" this case. *Pragmatus Telecom, LLC v. Advanced Store Co.*, No. CIV.A. 12-088-RGA, 2012 WL 2803695, at *2 (D. Del. July 10, 2012). "The only question is, 'How much?'" *Id.* While the answer to that question is unknown, there are many

possibilities, some of which would completely resolve the need to conduct discovery or a trial on most (if not all) issues in Delaware.

For example, if the Florida Action results in a determination that the asserted patents are invalid, then all of f'real's claims in this case will be resolved, because "collateral estoppel prevents a patentee from relitigating a determination of invalidity." *Spectrum Pharm., Inc. v. Innopharma, Inc.*, No. 12-260-RGA-CJB, 2015 WL 3374922, at *3 (D. Del. May 22, 2015), R. & R. adopted, 2015 WL 4634827 (D. Del. Aug. 4, 2015).

The Florida Action will also simplify the infringement issues in Delaware. In the Florida Action, f'real accuses Fresh Blends of infringement by alleging that "[t]he Fresh Blender® practices the inventions disclosed and claimed in f'real's '150 and '662 patents," Ex. 2, Florida FAC ¶ 21, and repeats those accusations here against Welbilt by alleging that "[t]he Multiplex FreshBlender made by Welbilt practices the inventions disclosed and claimed in f'real's '150 and '662 patents." D.I. 1 ¶ 20. Both allegations are predicated on f'real's assertion that the Fresh Blender—not something specific to each party—infringes the asserted patents. "In fact, a comparison of the complaint filed here with the pleading in the [Florida Action] reveals nearly identical allegations" with respect to the Fresh Blender. *Ultra Prod.*, 2009 WL 2843888, at *6. Thus, collateral estoppel would "prevent [f'real] from relitigating a determination of . . . non-infringement," *Spectrum Pharm.*, 2015 WL 3374922, at *3, even if the current accusations are not identical in both cases. *See Pragmatus*, 2012 WL 2803695, at *2. "[A]t the least, it will simplify the issue" of infringement. *Id.* Once these determinations are made in April 2020, the parties can return to this Court and reassess what issues, if any, remain.

Even if f'real were to prevail on its case in the Florida Action against Fresh Blends and receive full compensation, that too should end further proceedings for the Fresh Blender. In that

5

instance, there would be a jury determination on the amount of damages owed to f'real due to the Fresh Blender, and f'real's claims based on the Fresh Blender would be moot because f'real "would be barred from seeking further compensation . . . based on the same harm." *Pragmatus*, 2012 WL 2803695, at *2; *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 858 (Fed. Cir. 2006) (no further recovery allowed where plaintiff "has already been fully compensated for damages").

This Court will also benefit from any determinations made with respect to claim construction in the Florida Action, where f'real and Welbilt will exchange terms for construction on October 25, file opening claim construction briefs on November 4, and participate in a claim construction hearing on November 26. Ex. 6, Fl. Sched. Order at 3–4. Any claim terms that are "fully litigated" and receive final judgment would collaterally estop the parties from relitigating those same issues in this case. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013) (applying collateral estoppel where plaintiff "had a full and fair opportunity to litigate the dispositive claim limitations in the prior proceeding"). Indeed, f'real has already agreed that a stay "will avoid the risk of inconsistent results that could arise from litigating the same issues in two different forums at the same time," including the "risk that certain claim terms will be construed differently in the two cases." Ex. 4, f'real Stay Mot. at 9. And even prior to final judgment, if unresolved issues remain in this case after the Florida Action is resolved, this Court will gain the benefit of the parties' positions taken in the Florida Action, including each party's positions on infringement and invalidity, and the Florida Court's analysis and determinations on claim construction.

Staying this case pending resolution of the Florida Action would be analogous to staying it pending resolution of an instituted *inter partes* review ("IPR") on the asserted patents, and "district courts have frequently issued stays in cases in which IPR proceedings have been

6

instituted," including even when institution is "on fewer than all the claims asserted in the related litigation." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 3943058, at *9 (D. Del. Aug. 21, 2019); *see also, e.g.*, *CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. CV 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (granting stay pending IPR).

The rationales for granting stays pending an IPR are many, for example, if the patents are invalidated, "the case will unquestionably become simpler," the other forum's findings "will have a likely effect on the litigation by limiting the arguments . . . regarding validity," the Court will benefit from the other forum's "guidance on the construction of certain claim terms," and allowing the other forum to proceed "reduces what otherwise could be duplication of effort and possibly inconsistent results between the" two forums. *IOENGINE*, 2019 WL 3943058, at *9–10.

Here, those reasons are even more applicable. While an IPR is limited to determining invalidity of the patents and only based on "prior art consisting of patents or printed publications," 35 U.S.C. § 311(b), the Florida Court may address all the same issues as this Court would. Another rationale favoring the "liberal policy" of granting stays is "to provide a 'faster, less costly alternative,'" *IOENGINE*, 2019 WL 3943058, at *3–4 (quoting 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011)), as an IPR must be resolved "not later than 1 year after" its institution. 35 U.S.C. § 316(a)(11). Here, the Florida Action will be tried to a jury verdict in an even speedier timeframe of less than seven months from now. Ex. 6, Fl. Sched. Order at 1. And litigating two district court cases with overlapping issues at the same time will undoubtedly be more costly for the parties and a greater strain on judicial resources nationwide.

Lastly, the Florida Action also requires the parties to engage in mediation, with a deadline to select a mediator by October 11, 2019, and to complete mediation by February 13, 2020. Ex.

7

6, Fl. Sched. Order at 3–4.  As part of that process, Welbilt would entertain a global resolution that includes the disputes in here.  And the parties could potentially resolve all of the issues before this Court within the confines of an already set mediation process.

### 2. Discovery Is in Its Infancy, and Trial Is Not Set

Courts in this District consistently hold that this factor favors a stay where "Defendant's motion to stay was filed early in [the] case." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012).  This case is in its infancy.  There has been no scheduling conference, no scheduling order, and no trial date has been set.  D.I. 14. ¶ 1.  In contrast, the April 2020 trial date in the Florida Action was set two weeks before f'real moved for its stay there.  *See* Ex. 3, Florida Action, D.I. 28 at 1 (issued on Aug. 16, 2019); Ex. 4, f'real Stay Mot. (filed on Aug. 30, 2019).  In this case, although the parties have exchanged initial discovery requests, D.I.s 13, 15–16, 20, the overwhelming bulk of discovery and the bulk of the case remains, which favors a stay.  *E.g.*, *Pragmatus*, 2012 WL 2803695, at *2 (granting stay where "motion was filed before any trial date had been set" and where "[n]o discovery of significance has occurred"); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. CIV.A. 04-1337-KAJ, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (granting stay that "comes at time when discovery has not even begun and no trial date has been set").

f'real may argue that there will be overlap in discovery between the two cases, but that would oversimplify the issue.  Even duplicating discovery would require additional time and effort, which could be compounded by any discovery disputes between the parties (including non-overlapping local counsel).  Less than one month ago, f'real argued that the Florida Action, filed three days after this case, was "in its infancy" and "that a stay at this time would preserve a significant amount of judicial and party resources."  Ex. 4, f'real Stay Mot. at 10.  That remains true of the Delaware case today.

8

### 3. A Stay Will Not Cause Undue Prejudice or a Clear Tactical Disadvantage to f'real

f'real will not suffer any undue prejudice or tactical disadvantage if the Court grants a stay. There are three products accused of infringement in this case.  f'real has known about Welbilt's Blend-in-Cup technology since 2011, D.I. 9, Counterclaims ¶ 9, yet waited until just recently to file this lawsuit.  In contrast to f'real's machine, the Multiplex Blend-In-Cup Workstation and MAM9904 Blend-In-Cup – Manual Fill are behind the counter, employee-operated machines.  *Id.* ¶ 92.  To the extent that "[a]ny purported harm that [f'real] suffers from a stay can be fully compensated by monetary damages," that favors a stay under this factor.  *Pragmatus*, 2012 WL 2803695, at *2.  The Fresh Blender is the customer-operated machine that f'real's counsel argued was a reason they filed this lawsuit, stating that "if you look in the marketplace, they [*i.e.*, Welbilt] are moving in their machines to our convenient store customers and having them placed right next to our machines -- using our technology, putting it right next to our machine." Ex. 5, Fl. Hr'g Tr. at 26:12–15.  Yet, the Florida Action is where issues relating to the Fresh Blender—the machines allegedly "being placed right next to [f'real's] machines," *id.*—will be resolved on an "accelerated schedule[]" and with all accused defendants present instead of just Welbilt, which are some of the reasons that the Florida court denied f'real's stay motion.  *Id.* at 10:15–18.  Further, any alleged prejudice to f'real is belied by f'real's own actions in Florida.  There, f'real was aware that Florida would quickly resolve their claims against the Fresh Blender, but they moved to stay that case and prevent that quick resolution.  With a stay here, however, the parties may quickly resolve most, if not all, issues that are before this Court.

### IV. CONCLUSION

For the foregoing reasons, Welbilt respectfully requests that the Court grant its motion to stay this case in its entirety pending resolution of the Florida Action.  Welbilt proposes that the

parties provide periodic updates on the status of the Florida Action and return immediately following resolution of that Action, expected in just seven months, to inform this Court of any remaining issues to be tried.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Joseph A. Loy<br>Chris Ilardi<br>Kyle D. Friedland<br>Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, NY 10022<br>(212) 446-4800<br>joseph.loy@kirkland.com<br>chris.ilardi@kirkland.com<br>kyle.friedland@kirkland.com<br><br>Dated:  September 27, 2019 | */s/ Kelly E. Farnan*<br>Kelly E. Farnan (#4395)<br>Renée M. Mosley (#6442)<br>Richards, Layton & Finger, PA<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>farnan@rlf.com<br>mosley@rlf.com<br><br>*Attorneys for Defendant* |

10

RLF1 22110601v.3